# AFFIDAVIT

Your Affiant, Gregory Loerch, being duly sworn, deposes and states:

1. Your affiant is a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Columbus Field Division, Cleveland Office, having been so employed since June 2018. In that capacity, your affiant is an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am presently assigned as a Special Agent for the ATF Columbus Field Division's Cleveland Group IV. As a SA for ATF, I have participated in federal and state investigations involving the sale, possession, and trafficking of firearms and controlled substances. Through my participation in these investigations, I have debriefed defendants, confidential informants, cooperating sources, and witnesses with personal knowledge regarding firearms or narcotics trafficking. I have also conducted physical and electronic surveillance, managed informants and cooperating sources, seized evidence and contraband, executed search warrants, and arrested defendants.

3. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States. As a result of my training and experience, I am familiar with federal laws including 18 U.S.C. § 922(o), which states that it shall be unlawful for any person to knowingly possess a machinegun.

4. This Affidavit is being submitted for the limited purpose of establishing probable cause that Brandon SANTIAGO MIRANDA has violated Title 18 U.S.C. § 922(o), possession of a machinegun. The statements are based upon my personal knowledge and observations, my training and experience, information obtained from other law enforcement and witnesses, and the

review of various documents and records. This affidavit does not include every fact known to me regarding this investigation, but will seek to summarize relevant information.

## PROBABLE CAUSE

5. In March of 2024, an investigation was opened following a shooting incident in Cleveland, Ohio, involving the firearm in which the recovered spent cartridge casings were submitted for National Integrated Ballistic Network (NIBIN) testing. The casings were correlated and assigned to NIBIN Enforcement Support System (NESS) Crime Gun 773-23-005409.

### National Integrated Ballistic Information Network (NIBIN)

6. NIBIN is an ATF-managed law enforcement tool to identify, target, and prosecute "shooters," and determine their sources of gun crime. NIBIN is a national database of digital images of spent bullets and cartridge cases found at crime scenes or test-fired from confiscated weapons. It is a unique ballistic comparison system that allows technicians to digitize and automatically sort shell casing signatures. The ballistic match provides investigators with real-time leads. Through searches locally, regionally, or nationally, NIBIN partners are able to discover links between firearms-related, violent crimes more quickly, including links that would have never been identified without this technology.

7. To use NIBIN, examiners or technicians enter bullet and casing evidence into the Integrated Ballistic Identification System (IBIS). Then the new images are correlated against earlier entries through NIBIN. NIBIN data is limited to ballistic information from firearms test fires and fired ammunition components acquired by law enforcement as part of a criminal investigation for the sole purpose of identifying and prosecuting shooters.

8. A NIBIN hit typically starts with recovered spent cartridge casings or the test fires from firearms recovered from a suspect or the scene, which are entered into the system. Within a matter of hours, a firearms examiner uses ballistic imaging to convert the spent rounds into two or three-dimensional digital images that are uploaded into NIBIN. NIBIN can be searched for possible matches, that is, other rounds that have similar tool marks and thus may have been fired from the same gun. Multiple casings/bullets may be entered as part of the same case record.

9. After a possible match is identified, the crime lab secures the actual spent round(s) and compares them under a microscope to confirm the hit. Then the lab sends information on the hit to investigators. A "hit" is a linkage between two different crime scenes where previously there had been no known connection.

### NESS Crime Gun ID 773-23-005409

10. NESS Crime Gun 773-23-005409 had four linked shooting incidents in Cleveland, Ohio prior to the recovery of the firearm. The following are brief synopses of the incidents.

    a. Incident #1 - October 11, 2023 - 3211 W. 41st Street, Cleveland, Ohio - The first incident associated with the crime gun was a ShotSpotter alert for 10 rounds of fully automatic gunfire on October 11, 2023. Per report 23-312870, officers that arrived on scene collected two spent .40 caliber casings at the intersection of W. 41st Street and Newark Court, Cleveland, Ohio.

    b. Incident # 2 - November 12, 2023 – 3225 W. 43rd Street, Cleveland, Ohio - The second incident occurred on November 12, 2023, at 3225 W. 43rd St. Cleveland, Ohio. In that incident, per CDP report 23-343525, victim, Michelle Ortiz, stated that she came back from a block party, heard gunshots, and noticed that her vehicle was struck nine (9) times by gunfire. Ortiz mentioned the names Yadiel Rodgriguez and "Tony" as possible suspects, but was not certain if they were involved as she never saw the shooters. Officers collected 29 spent .40 caliber casings. ShotSpotter showed alerts for 10 rounds of fully automatic gunfire followed by 15 rounds of fully automatic gunfire beginning at 1:35 am. NIBIN testing determined it was likely two .40 caliber firearms used based on the casings tested.

    c. <u>Incident # 3 - January 28, 2024 - 4019 Newark Avenue, Cleveland, Ohio</u> - A ShotSpotter alert for nine (9) rounds if full auto gunfire occurred at 4019 Newark Avenue, Cleveland, Ohio. Per report 24-025688, officers collected 14 spent 9mm casings and one (1) spent .40 caliber casing. ATF SA Keith Lewis and K9 Jackson also responded at a later date and recovered additional casings. The location is in the same immediate vicinity of the first incident from October 11, 2023. With numerous NESS Crime Guns linked to the recovered casings at that scene, it is unknown which firearm the alert was in relation to.

    d. <u>Incident # 4 – March 6, 2024 – 3739 Newark Avenue, Cleveland, Ohio</u> - Per report 24-061735, CDP officers responded to the location and collected approximately 28 spent cartridge casings. (Note: the report says 9mm casings, but further review of the casings sent for imaging in NIBIN show .40 caliber casings). Officers spoke with unidentified individuals who were at the Family Market (W. 38th and Newark Ave.), that advised they heard the shots but did not see the shooting. One patron in the Family Market said that the shooter possibly lived in the upstairs unit of 3727 Newark Avenue. The officer was unable to relocate the patron after the officer left the Family Market then returned a short time later. Officers received information from CDP Detective Zola over the phone that advised he received a call from someone, known to law enforcement but not identified herein, who was on scene at the time of the shooting that said they believed the shooter was a male that lived in upstairs unit of 3727 Newark Ave. The description given by the caller was that the shooter was a light-skinned Hispanic male, approximately 5'5" tall, and had a beard.

11. Your Affiant has reviewed law enforcement data bases that document physical descriptors of Brandon SANTIAGO MIRANDA. According to the Ohio Law Enforcement Gateway (OHLEG) SANTIAGO MIRANDA is a light-skinned Hispanic male, 5 foot 6 inches tall, and weighs approximately 120 pounds, and a picture depicts a full beard.

12. On April 4, 2024, at approximately 7:15 am, the detectives of the Cleveland Division of Police (CDP), with assistance of the ATF, executed a state search warrant at 3727 Newark Avenue, Upstairs Unit, Cleveland, Ohio, the residence of Brandon SANTIAGO MIRANDA.

13. During the execution of the search warrant, as CDP units were clearing the upstairs unit, the rear door to the downstairs unit located in the common area with internal stairs to access the upstairs unit, was opened by Brandon SANTIAGO MIRANDA. SANTIAGO MIRANDA was checking

on what was going on and was asked by a CDP detective if he, SANTIAGO MIRANDA, occupied the upstairs unit as well. SANTIAGO MIRANDA replied in the negative. After SANTIAGO MIRANDA went back into the downstairs unit and shut the door, the detective advised CDP Detective Eric Sanchez that SANTIAGO MIRANDA was in the downstairs unit. Det. Sanchez knocked on the door and SANTIAGO MIRANDA opened the door. Det. Sanchez asked SANTIAGO MIRANDA to step out into the common area to which SANTIAGO MIRANDA complied and was subsequently detained in handcuffs.

14. The search of the upstairs unit resulted in the recovery of the following items that were located in a safe in the bedroom.

    a. Glock, Model 23, .40 Caliber pistol, bearing SN: SHU114 (determined to be NESS Crime Gun 773-23-005409), equipped with a blue machine gun conversion device;
    b. Machine Gun Conversion Device – Metal nickel colored "Glock Switch";
    c. Suspected Cocaine – Approximately 106 grams in plastic bags.

Also located in the safe was SANTIAGO MIRANDA's birth certificate, social security card, and other personal paperwork, and various ammunition and firearm accessories to include a high-capacity drum magazine. Additionally located in the bedroom was a Zastava, Model N-PAPDF, 7.62 caliber rifle, bearing SN: NPDF013582, and numerous packages of small baggies typically used for narcotics packaging. Mail addressed to SANTIAGO MIRANDA was also located in the upstairs unit.

15. Through the use of another officer interpreting, Det. Sanchez advised SANTIAGO MIRANDA of what was located in the upstairs unit and asked if SANTIAGO MIRANDA would grant consent to search the downstairs unit. The translator read the consent to search form and SANTIAGO MIRANDA agreed verbally and in writing to the search. Among the items

recovered in the downstairs unit was a Glock, Model 26, 9mm Caliber pistol bearing SN: AHTG106.

16. SANTIAGO MIRANDA's three vehicles located outside the residence that were listed on the search warrant were also searched. Located in the trunk of the Toyota Corolla, bearing Ohio license plate JWL1332, that was parked in the driveway was an Anderson Manufacturing, Model AM-15, multi-caliber pistol bearing SN: 21139047 with a drop in auto sear machinegun conversion device.

17. In the days following SANTIAGO MIRANDA's arrest, Det. Sanchez listened to some of SANTIAGO MIRANDA's jail calls from the Cuyahoga County Jail. SANTIAGO MIRANDA's calls are primarily in Spanish and so any synopsis of the calls is only a loose translation and not to be considered a transcription. In one call to his girlfriend Adianez Morales Santos on April 4, 2024, SANTIAGO MIRANDA talked about how serious the situation is, that it is his fault, and he mentions "el switch" and also calls it a "boton." Your Affiant submits SANTIAGO MIRANDA had knowledge of the machinegun conversion devices characteristics and knew the conversion devices were designed to shoot automatic.

18. Your Affiant knows that machinegun conversion devices on Glock pistols are commonly referred to "Glock switches," "switches," and/or "buttons" on the street.

**Machine Gun Conversion Devices**

19. Certain pistols can be readily converted to shoot automatically. Specifically, an individual can affix a "Glock Switch", to a Glock pistol to make the pistol shoot automatically and function as machinegun. A machinegun is a firearm under the National Firearms Act (NFA), 26 U.S.C. § 5845(a). A machinegun is defined, in pertinent part, as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon

into a machinegun." 26 U.S.C. § 5845(b). A Glock conversion device – commonly referred to as "Glock Switch" or "Glock Auto Sear" – is a part, or combination of parts, designed and intended for use in converting a semiautomatic Glock pistol into a machinegun; therefore, it is a "machinegun." The Gun Control Act, 18 U.S.C. § 922(o), prohibits the transfer or possession of a machinegun manufactured after May 19, 1986. ATF is not aware of any Glock conversion devices that were developed before May 19, 1986. As such, Glock conversion devices are considered post-1986 machineguns.

20. Conversion from semi-automatic to automatic is fast, simple, and requires little technical expertise. Most conversions typically involve removal of the original polymer slide cover plate and replacement with the conversion device. In some cases, the device may actually be attached to the existing slide cover plate. The conversion device is usually made of metal. The conversion process can take less than 60 seconds to complete. Conversion of a Glock pistol will result in a rate-of-fire of approximately 1100 -1200 rounds per minute.

21. Pursuant to ATF rulings and regulations, "Glock Switches" in and of themselves have been classified as machineguns pursuant to the definition appearing in 26 U.S.C. § 5861(d). Based on training and experience, affiant is aware individuals who possess firearms which have been converted to machineguns do not frequently attempt to register them in an effort to avoid detection by law enforcement.

**Machinegun Determination**

22. On April 5, 2024, Your Affiant emailed photographs of the three machinegun conversion devices recovered to ATF Firearms Enforcement Officer (FEO) John Miller of the Firearms and Ammunition Technology Division for a verbal machinegun determination. FEO Miller opined that the three machinegun conversion devices were consistent in size, shape and configuration

with all other machinegun conversion devices of this type he has encountered as an FEO. Specifically, these devices pictured were "swift link" style and Glock Chip and switch style.

## Criminal History

23. Your Affiant knows that SANTIAGO MIRANDA was previously indicted on charges of Improper Handling of a Firearm in a Motor Vehicle and Carrying a Concealed Weapon on or about March 22, 2019, in Case Number CR-19-637729-A, in the Cuyahoga County Common Pleas Court stemming from a February 27, 2019 arrest in Rocky River, Ohio. On August 12, 2019, SANTIAGO MIRANDA entered a guilty plea to both counts of the indictment and was ordered to complete Intervention in Lieu of conviction for one year. On August 12, 2020, having found SANTIAGO MIRANDA successfully completed the program his probation was terminated and the indictment was dismissed. The Cuyahoga County Common Pleas Court docket website listed an address for SANTIAGO MIRANDA as 3727 Newark Avenue, Cleveland, Ohio. A Rocky River Municipal Court personal bond document from his arrest was located in the upstairs unit safe with his birth certificate, social security card and Glock, Model 23, .40 Caliber pistol, bearing SN: SHU114 (determined to be NESS Crime Gun 773-23-005409), equipped with a blue machine gun conversion device.

## CONCLUSION

24. Based upon the above listed facts and circumstances, Your Affiant believes and asserts that there is probable cause to believe that on April 4, 2024, SANTIAGO MIRANDA did unlawfully and knowingly possess a machinegun, in violation of Title 18, Untied States Code, Section 922(o).

25. The above violation was committed in the Northern District of Ohio, Eastern Division. Your Affiant requests than an arrest warrant be issued for Brandon SANTIAGO MIRANDA.

_____
Gregory Loerch, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

This affidavit was sworn to by the Affiant by telephone after a PDF was transmitted by email, per Crim R. 41(d)(3) on this 12 day of April, 2024. at 1:15 p.m.

_____
U. S. Magistrate Judge Jennifer Dowdell Armstrong
Northern District of Ohio, Eastern Division